CHARLES KIRCHNER *vs.* THOMAS H. MORRISON *et al.*— (ALICE KELLETT, Appellant, *vs.* THOMAS H. MORRISON, Exr., Appellee.)

*Opinion filed February 18, 1926.*

1. HUSBAND AND WIFE—*what is sufficient proof of terms of lost post-nuptial agreement.* In proving the terms of a lost instrument a witness is not required to state from memory the language, verbatim, of the contract, and where execution of a lost post-nuptial agreement is properly established by oral evidence, testimony of the attorney who drew the instrument that it "fully and completely extinguished the present interest in the property of either of the parties and both of the parties, and it provided that it would extinguish, and did extinguish, any future possible interest in the property of either of them," is sufficient to prove the terms of the agreement and is not merely the conclusion of the witness as to the legal effect of the instrument.

2. SAME—*when post-nuptial agreement is not abrogated by will.* A post-nuptial contract entered into for a valuable consideration

and surrendering the rights of the parties in each other's property is valid, and where it is under seal it remains in force and is not abrogated by a provision in the will of one of the parties giving all her estate to a devisee to care for the surviving spouse, without mentioning the contract in the will.

3. WILLS—*what provision in will is sufficient to bar statutory rights.* Where a testatrix gives all her property to a certain devisee, "feeling confident" that the devisee will see that the testatrix's husband will be taken care of, the provision for the care of the husband is one which a court of equity will enforce, and unless renounced by the husband will be sufficient to bar his statutory rights.

4. SAME—*when devisee accepting benefits of will is not precluded from setting up post-nuptial agreement to bar claim of surviving husband under Dower act.* The rule that a party accepting a benefit given by a will cannot set up any other right or claim to the estate under the statute cannot be applied to preclude a devisee to whom a testatrix gave all her estate, "feeling confident" that he will care for her husband, from setting up a post-nuptial agreement of the husband in bar of the latter's claim to one-half of the estate by virtue of his renunciation under section 12 of the Dower act, where the devisee had no statutory rights in the estate, no right of election and nothing to relinquish upon accepting the devise.

APPEAL, from the Circuit Court of Kane county; the Hon. WILLIAM J. FULTON, Judge, presiding.

JOHN M. RAYMOND, and PEFFERS & WING, for appellant.

E. L. LYON, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Kane county dismissing the bill of appellant for partition of real estate.

The material facts are, that Alice Kirchner died testate in March, 1923, owning three small parcels of real estate in Kane county. Her will, which was executed in March, 1919, was admitted to probate. She left Charles Kirchner, her husband, but no child or descendants of a child surviving. The will directs the payment of the debts of testa-

trix, $100 to the executor, if there was sufficient personal estate to pay that sum, for masses, and then reads: "My nephew, Thomas H. Morrison, and his wife, have been taking care of my husband in my absence and I feel that from this time both my husband and myself will depend more and more upon the care of said Thomas H. Morrison and his wife, and feeling confident that my trust in them is well placed and that in case my husband should survive me that my said nephew will see that he is taken care of, I therefore give, devise and bequeath all of my estate, after the payment of debts, to my nephew, Thomas H. Morrison, to him, his heirs and assigns forever." Morrison was nominated executor without bond. On May 15, 1923, Charles Kirchner, the surviving husband, filed a renunciation of the will and an election to take, in lieu of dower and his legal share of the estate, one-half of all the real and personal estate remaining after the payment of debts. The renunciation and election were made under section 12 of the Dower act. The surviving husband then filed a bill for partition, in which he alleged all claims, the $100 legacy and costs had been paid and that he was seized of the undivided one-half of the real estate. The answer denied plaintiff had any interest in the real estate, and set up as defense that after the marriage of Alice and Charles Kirchner, the husband for a valuable consideration executed and delivered to his wife a release of every right, title, interest, claim and demand in all property then owned by her or which she might thereafter acquire, and which rights Charles acquired upon his marriage to Alice, specifically releasing the right of dower or homestead and all right to inherit from Alice. While the bill was pending, and before a hearing, the complainant died testate, leaving no widow or child or descendants of a child. By his last will he gave all his property and estate to Alice Kellett and appointed her executrix. She was by order of the circuit court substituted as complainant in the bill. She has prose-

cuted this appeal from the decree of the circuit court dismissing the bill at the conclusion of the hearing.

The errors assigned are: (1) The court erred in dismissing the bill for want of equity; (2) the court erred in not decreeing partition as prayed in the bill; (3) the court erred in holding Charles Kirchner had no title or interest in the property; (4) the court erred in not holding Kirchner, at the time of his death, was seized of an undivided one-half interest in the property; (5) the court erred in dismissing the bill and in refusing to grant any relief thereunder.

The post-nuptial contract relied upon in the answer has been lost, and after proof of its loss and diligent search for it, R. A. Milroy, an attorney, testified for appellee that in the summer or fall of 1916 Alice Kirchner and her husband came together to witness' office and advised with him about preparing an instrument releasing the right of each in the property of the other as husband or wife. Witness told them he would have to look the matter up and requested them to call again in a couple of days. He drew the contract and they returned in a day or two and executed it. Witness took their acknowledgment to it. He testified it fully and completely extinguished the present interest in the property of either and both of the parties, and provided that it would extinguish, and did extinguish, any future possible interest either of them would otherwise have in the property of the other. He gave the contract to Mrs. Kirchner and told her to have it recorded. She told witness at the time that she had either paid a mortgage on a lot owned by Kirchner or had taken up a contract entered into by him to purchase it, and said if Kirchner wanted to dispose of his property she wanted him to extinguish his interest, present and future, in her property. Witness understood Kirchner wanted to dispose of his property to Morrison. Witness' testimony was heard over the objection of appellant.

The appellee, Morrison, testified Mrs. Kirchner showed him the contract in the fall of 1916, in the presence of her husband. He was afterwards appointed conservator for Mrs. Kirchner, and testified that she obtained her papers from the bank later and exhibited to him the contract twice afterwards. Witness testified to two conversations with Mrs. Kirchner about the contract, but after her death it could not be found. His testimony also was objected to by appellant but was heard subject to objection.

Part, at least, of the last witness' testimony was incompetent, but we do not regard the question as of much importance. Appellant argues the question of the competency of the testimony of both Milroy and Morrison, but has assigned no error which preserves the question for review. *Colbert* v. *Rings,* 231 Ill. 404; *Swift & Co.* v. *Fue,* 167 id. 443; *Waggoner* v. *Saether,* 267 id. 32.

It is further contended by appellant that the testimony of the witness Milroy was not sufficient to prove the contents of the lost post-nuptial agreement, and that his testimony was merely a conclusion as to the legal effect of the contract; that the law requires the terms of it to be proven. Its legal effect is a question of law. He testified the contract released all dower and homestead rights of the husband in the wife's property. "The document, as I drew it, fully and completely extinguished the present interest in the property of either of the parties and both of the parties, and it provided that it would extinguish, and did extinguish, any future possible interest in the property of either of them." We do not understand that to be the witness' conclusion as to the legal effect of the instrument but that, in substance, such were the terms of the contract. The witness was not required to state from memory the language, verbatim, of the contract. That, in most instances, would be an impossibility and practically exclude oral evidence to establish the contents of a lost instrument. (*Perry* v. *Burton,* 111 Ill. 138.) The competent proof,

we think, established the execution of the contract, and the authorities are abundant that a post-nuptial contract entered into for a valuable consideration is a valid agreement. A comparatively early and leading case on the subject is *Crum* v. *Sawyer,* 132 Ill. 443, and such contracts have uniformly been sustained by this court in subsequent cases.

Appellant contends that if the proof established the execution of the post-nuptial contract and its contents the will and contract cannot both stand; that appellee by accepting the benefits of the will cannot now be heard to insist upon the enforcement of the post-nuptial contract. The contract was made about three years before the will was executed and about six years before the testatrix died. No reference is made in the will to the contract. The provision made in the will for the care of testatrix's husband was one a court of equity would enforce, and unless renounced would bar his statutory rights as husband. *Warren* v. *Warren,* 148 Ill. 641.

Appellant contends that the provisions in the will for the benefit of the husband of testatrix were an offer to purchase his statutory rights for the benefit of the estate; that the devisee of the testatrix is precluded from making any claim to the estate inconsistent with the legal effect and full operation of the will, and the will must be considered the same as if there were no post-nuptial contract. It is argued that the devisee, by accepting the provisions of the will, ratified every provision of it, and cannot now rely upon the post-nuptial contract to defeat the husband's renunciation and election. It is true, and has been so decided many times, that a person cannot accept a benefit given by a will and claim the statutory rights he would have been entitled to had there been no will. Where there is a right of election the acceptance of the provisions of the will is a ratification of it, and the person so accepting cannot set up any other right or claim to the estate. (*Gorham* v.

320—16

*Dodge,* 122 Ill. 528.) A devisee having such a right of election must accept the benefits of the will and surrender any other claim or right or reject the will. (*Burns* v. *First Nat. Bank,* 304 Ill. 292.) The above and like cases do not decide the point here involved. Appellee had no right of election to take some other right than that given by the will.. Did he, by claiming its benefits, lose the right to insist upon the contract barring the husband from any share of the estate? Treating the post-nuptial contract as proved, it barred the surviving husband from claiming any interest in his wife's estate upon her death. Notwithstanding the contract the wife provided in her will for his being cared for by her devisee, if her husband survived her. She was under no legal obligation to make such provision. It was a gratuity on her part.

Appellant contends that by acceptance of the provisions of the will by appellee the contract must be disregarded and the husband's renunciation and right under section 12 of the Dower act sustained. We cannot agree that such a result must follow. Appellant refers to several decisions, the most important, we believe, being *Alward* v. *Woodard,* 315 Ill. 150, *Burns* v. *First Nat. Bank, supra,* and *Ditch* v. *Sennott,* 117 Ill. 362. In the *Alward case* a father in his lifetime conveyed to one of his sons a tract of land under an oral agreement that it was accepted by the grantee in full of his share of the father's estate. The father left a will, in which he devised his lands to all his ten children in equal shares. The will further provided that if either of the testator's children shall have received advancements of money or property before his decease the same should be deducted from such child's share. The court held the will was competent to be considered, in connection with other oral proof, to determine whether the final intention of the testator was that the advancement should be deducted and not considered as the son's full share of the estate. The court said: "The testator had the right to make

provisions in his will more favorable to appellee than the terms of the contract." We do not think that case decisive of the question here presented, as appellant contends. The testatrix, as we have said, had the right to make the provision she did make in her will for the care of her husband by appellee, notwithstanding the contract. She gave her husband no property but provided that he should be cared for by appellee. The property was hers, and she could make disposition of it more favorable to her husband than the contract. While that provision could have been enforced by a court of equity it did not abolish and annul the contract. It is true the contract was not mentioned in the will, but that did not abrogate or annul it. We think the contract remained in force, as it was under seal, and there was no proof that it was canceled or destroyed. *Yockey* v. *Marion,* 269 Ill. 342.

In *Parker* v. *Gray,* 317 Ill. 468, the ante-nuptial contract relied on as a defense to the widow's claim of dower was not mentioned in the will but it was set up as a defense to her claim in the answer. Its validity was disputed on the ground that the widow had not been informed by the intended husband when she signed the agreement, and did not know, of the nature and extent of her husband's property, which was of great value, and the provision in the agreement for the wife was disproportionate to the value of the husband's estate. The court said the sole question presented for decision was the validity of the ante-nuptial contract, and it was held invalid, not because it was not mentioned in the will but because the widow had not been informed and did not know of the nature and extent of the husband's property when she signed the contract.

We do not think because testatrix made provision in the will for the care of her husband she abrogated and canceled the contract, nor that appellee, by claiming the benefits of the will, is precluded from insisting upon the validity of the agreement. He was not a party to the contract,

but as heir-at-law and a devisee it was for his benefit and he was interested in it. He· took title under the will subject to the burdens imposed by it, and had a right to insist upon the contract as a bar to any statutory claim of the husband to a share in his deceased wife's estate.

We are of opinion the decree was correct, and it is affirmed.

*Decree affirmed.*