Elmore *et al. v.* Covington *et al.*

*(Jackson,* April Term, 1943.)

Opinion filed May 29, 1943.

A. L. Dorsey and John D. Sprouse, both of Springfield, for appellants.

Charles Willett, of Springfield, for appellees.

Mr. Justice Neil delivered the opinion of the Court.

Complainants, who are the brothers and sisters and hence the heirs at law of Mrs. Lizzie Elmore Carroll, filed their original bill against the defendants seeking a recovery for breach of contract to make a will in their favor. Mrs. Lizzie Elmore Carroll was the wife of J. A. Carroll, deceased, and predeceased him. She died in-

testate and was possessed of two houses and lots in Springfield, Tennessee. This property descended to the complainants, since there were no children born to Mrs. Carroll and J. A. Carroll. The latter acquired all her personal estate, which consisted of between seven and eight thousand dollars. It is alleged in the bill that after Mrs. Carroll's death the complainants deeded to J. A. Carroll the two houses and lots that formerly belonged to her; that the consideration for this conveyance was that J. A. Carroll would execute a will devising and bequeathing to them a share in his estate equal in value to shares given to his own brothers and sisters. It is alleged that J. A. Carroll was very fond of his wife's brothers and sisters and that he agreed that in making his will he would make no difference between them and his own brothers and sisters; that by virtue of this agreement the complainants are entitled to nine-thirteenths of J. A. Carroll's estate.

The testator died on July 20, 1942, and left a will in which he devised complainants the two houses and lots in question and bequeathed to each of them $100 in cash. The greater part of his estate was given to his own brothers and sisters, the defendant Mrs. Addie Carroll-Lax receiving a larger share than any other brother and sister.

The prayer of the bill is that complainants have and recover of H. H. Covington, executor, and Mrs. Addie Carroll-Lax, and other brothers and sisters of testator, the difference between the value of the property received by them under the will and their share of the estate had testator made a will in compliance with the alleged agreement.

The defendants answered the bill and denied all the material allegations therein. It is averred in the answer that at the time the alleged contract was entered into the testator J. A. Carroll was the owner of over 200 acres of land in Robertson County, as well as two lots in Springfield; that the contract upon which complainants rely is within the Statute of Frauds and Perjuries and "was voidable *in toto* as to both real estate and personal property at the election of J. A. Carroll and that he elected to avoid the same."

Complainants filed an amended bill in which, among other things, it is alleged that the said J. A. Carroll is estopped by his conduct from pleading the Statute of Frauds and that defendants are in no position to disaffirm the contract. It is further alleged as follows: "These complainants did not by said original bill intend to release what was devised and bequeathed to them by the said J. A. Carroll and do not now do so," etc.

Upon the filing of the amended bill, the defendants filed the following motion:

"That the Complainants be required by the Court to elect in this cause:

"(1) Whether they will pursue and prosecute the alleged claim for damages set up in the original bill, based upon an alleged contract and agreement with said Testator to devise and bequeath to them 9/13th. of his property; or,

"(2) Whether they will pursue and prosecute the alleged claim set up in the supplemental bill to recover the specific property willed to them by said Testator."

The Chancellor sustained said motion and entered a decree accordingly.

Complainants have appealed and assigned errors. In the first four assignments it is contended that the complainants should not be required to make an election, because the doctrine of election is not involved. Assignment 5 is as follows:

"The Court erred in decreeing that appellants must elect, and in dismissing their bill because they refused to elect, because the testator, J. A. Carroll, deceased, did not purport to devise or bequeath to others anything that belonged to appellants; wherefore, there was nothing upon which to predicate the decree requiring election."

We think upon an examination of the original and amended bill that complainants seek to set up inconsistent and repugnant rights and interests in the estate of the testator. In the original bill they seek a recovery based upon an alleged contract to make a will. In the amended or supplemental bill they assert their right to claim under the will and ask that the devise and bequests to them be credited upon or charged against their claim to nine-thirteenths of the estate. It is earnestly urged upon us by able counsel for complainants that the doctrine of election has no application when claims are not recognized or have not been established; that since "the testator by his will did not devise or bequeath to others anything that belonged to complainants, that there was nothing upon which to predicate the decree requiring election."

 The testator in the instant case did not dispose of any property that belonged to these complainants. While our decisions uniformly hold that the doctrine arises where the testator gives away property belonging to a legatee or devisee, we find ample authority to sustain the contention that it also applies where one asserts conflicting rights to property, i. e., claiming under the will

and making a separate claim against the estate. The cases cited by counsel, *Bible* v. *Marshall,* 103 Tenn., 324, 52 S. W., 1077; *Battle* v. *Claiborne,* 133 Tenn., 286, 180 S. W., 584; and *Colvert* v. *Wood,* 93 Tenn., 454, 25 S. W., 963, are not in conflict with this view. In applying the doctrine of election, which often involves the question of estoppel, the courts have not limited it to rights or interests that are wholly recognized or established. If the complainants are permitted to claim their devise and the bequests and also prosecute a suit for damages for breach of contract to make a will, the result will be to wholly nullify the will of the testator. It is undoubtedly true that a creditor of an estate, who is also a beneficiary under a will, may prosecute his claim without surrendering his bequest where the bequest was not intended as a payment of the debt; but in the instant case complainants are retaining benefits under the will and at the same time suing the defendants because the value of their devise and bequests is not as great as what they had hoped to receive.

 Mr. Pomeroy in discussing the equitable doctrine of election says:

"This doctrine involves the notion that no man can claim inconsistent rights with regard to the same subject, and that anyone who asserts an interest under an instrument is bound to give full effect to the instrument; he cannot both accept and reject it, or avail himself of its benefits as to a part and defeat its provisions as to other parts." Pomeroy's Equity Jurisprudence, sec. 395.

It is true the author suggests that it arises where the donor devises a property or interest that belongs to the beneficiary.

■ Now the inconsistent rights of complainants relate to the will of the testator and his failure to make a will devising them a greater interest in his estate. If the doctrine of election does not apply in these circumstances, the complainants will be enabled to use their interest to finance a lawsuit against the estate of decedent to the possible, if not probable, destruction of the rights and interests of others. This appears to us to be in violation of the well known maxim ''He who seeks equity must do equity.''

■ It must be observed in the instant case that the testator devises to these complainants the identical property which they had conveyed to him, and in addition thereto he bequeaths to each of them one hundred dollars in cash and other articles having some value. This appears to be, inferentially at least, an intention on the part of the testator to make an equitable adjustment of complainants' rights arising out of their deed of conveyance. Conceding that complainants are able to prove their contract, the testator has by will offered to return what is alleged to be the consideration, to-wit, the two houses and lots, and an added bequest. They must either accept or reject; they will not be permitted to bargain with a dead man. We think the case falls within the general rule that runs through all our cases, as well as those from other jurisdictions, that one will not be allowed to claim under a will and at the same time deny its legal effect as to others. *Everett* v. *Mickler*, 6 Tenn. Civ. App. (Higgins), 590, 593; *Williams* v. *Williams*, 83 Tenn., 438; *Miller* v. *Fidelity Bankers Trust Co.*, 164 Tenn., 149, 46 S. W. (2d), 516. In one of our early cases, *Williams* v. *Gray*, 41 Tenn., 104, it was held that a widow must elect between rights under a prenuptial contract and her hus-

band's will. See, also, *Burns* v. *First National Bank*, 304 Ill., 292, 136 N. E., 695. Our attention has been called to the case of *Parkes* v. *Burkhart*, 101 Wash., 659, 172 P., 908, 910, which is clearly applicable to the question now before us. The facts are quite similar to the instant case. Mary M. Parkes and her husband, Charles R. Parkes, owned an estate, the same being community property. Upon the death of Charles R. Parkes, one-half of the estate went to Mary M. Parkes and the other half to appellant, who was a stepson of Mary. The stepson conveyed his interest to his stepmother, Mary, at her request, and upon her promise that at her death she would will the whole estate to him. The said Mary M. Parkes bequeathed part of the estate to Charles, but the greater part thereof was bequeathed to her collateral relatives. Thereupon the appellant instituted suit to recover the estate based upon the oral contract with his stepmother and also to recover money expended by him for her benefit. He also claimed under the will of the said Mary M. Parkes. The Court held that it was a proper case for the application of the doctrine of election saying:

"Appellant is seeking to take under the will and at the same time set up a right or claim which, if well founded, would defeat the will in so far as it affects respondents. . . . It is too well settled that one who accepts a benefit under a will must accept the whole will and ratify every portion of it."

▆ The principle thus announced follows our own case of *Williams* v. *Williams*, 83 Tenn., 438, 445, approving *Hyde* v. *Baldwin*, 17 Pick., Mass., 303, wherein it was held as an established rule in equity "that a man shall not take any beneficial interest in a will, and at the same time set up any right or claim of his own, even if other-

wise legal and well founded, which shall defeat, or in any way prevent, the full effect and operation of every part of the will.''

We have given due .consideration to each and every assignment of error. They are overruled and the decree of the Chancellor is affirmed.

Complainants will pay the costs of the appeal.