AFFILIATED BANC GROUP, LTD., et al., Respondents,

v.

Jack ZEHRINGER and Phyllis Zehringer, Appellants,

Nancy Zehringer, et al., Defendants.

No. C6–94–1325.

Court of Appeals of Minnesota.

Feb. 14, 1995.

C. Thomas Wilson, Gislason, Dosland, Hunter, & Malecki, New Ulm, for appellants.

Brad A. Sinclair, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, ND, for respondents.

Considered and decided by CRIPPEN, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

CRIPPEN, Judge.

The trial court granted respondent mortgagee's motion for summary judgment foreclosing on several mortgages on land owned by Jack Zehringer. We affirm the trial court's holding that appellant Phyllis Zehringer waived her inchoate interests in her husband's land in their antenuptial agreement.

## FACTS

Prior to their 1986 marriage, Jack and Phyllis Zehringer entered into an antenuptial agreement, stating in part that

> Jack Zehringer agrees to establish, by subsequent will, a bequest to Phyllis J. Heairet, if she survives as surviving spouse, * * * which bequest is intended to be in lieu of spouses share or election to take against the Will.

In a subsequent loan from Midwest Federal, Jack Zehringer provided security in part by granting mortgages on four non-homestead parcels of land that he acquired before the 1986 marriage solely in his name. Midwest requested that Phyllis sign the mortgages but she refused. At the time these mortgages were executed, Midwest was unaware of the 1986 antenuptial agreement.

In 1990, Jack Zehringer defaulted on the Midwest loan. Affiliated Banc Group succeeded to the mortgagee interests of Midwest and is the foreclosing party in this action. The trial court granted Affiliated a summary judgment for the foreclosure, holding that Phyllis Zehringer had no interest in the land and that she had waived any interest she may have had.

## ISSUE

Did appellant waive any inchoate interest she may have had in her spouse's separate, nonhomestead property?

## ANALYSIS

■ On appeal from a summary judgment, we must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (citations omitted).

Under current Minnesota law there is a question of what interest a spouse has in the separate, nonhomestead property of the other spouse. Minn.Stat. § 507.02 (1994) provides that a spouse may execute a separate deed to convey nonhomestead real estate owned by that spouse, "subject to the rights of the other spouse therein." This statute leaves unanswered the question of what the rights of the other spouse are.

At common law, a wife retained an inchoate dower interest in her husband's real property prior to his death. *See* 2 Richard R. Powell & Patrick J. Rohan, Powell on Real Property ¶ 209[1], [2] (1994). The husband could use the land as he saw fit but he could not destroy his wife's inchoate interest. *Id.* If the husband conveyed or mortgaged the land (excluding a purchase-money mortgage) the purchaser or mortgagee took the land subject to the wife's inchoate dower interest. *Id.*

The Minnesota legislature abolished common law dower in 1875. 1875 Minn. Laws c. XL. Subsequently, the legislature enacted a statute that allowed either spouse to elect against the will of the other and thereby take a one-third interest in any real property owned by the other spouse during the course of the marriage. *See* Minn.Stat. § 525.16(2) (1984). Under this statute, said the Minnesota courts, both spouses retained an inchoate interest in any real property owned by the other spouse during the marriage. A spouse was free to convey his or her separate property but it was conveyed subject to the other spouse's inchoate interests. *See Staples v. Miller*, 319 N.W.2d 57, 60 (Minn. 1982); *Wade v. Citizens' State Bank*, 158 Minn. 231, 235–36, 197 N.W. 277, 279 (1924);

*Coles v. Yorks*, 31 Minn. 213, 214, 17 N.W. 341, 341–42 (1883).

Minn.Stat. § 525.16 was repealed in 1985 and replaced with the elective share provisions of the Uniform Probate Code. *See* Minn.Stat. §§ 524.2–201—.2–207. Minn.Stat. § 524.2–201 still allows one spouse to elect against the will of the other, but now the spouse receives one-third of the "augmented estate", as defined in Minn.Stat. § 524.2–202. The augmented estate does not include all real property owned by the decedent spouse during the marriage, but only the value of certain property transferred during the marriage for inadequate consideration. Minn. Stat. § 524.2–202(1).

It is uncertain whether a spouse continues to retain an inchoate interest in the other spouse's nonhomestead property under the Uniform Probate Code. But we need not resolve that question here. If appellant retained an inchoate interest in her husband's property, she waived that interest in her antenuptial agreement.

■ Whatever inchoate interest a spouse may have in the other spouse's property derives from the spouse's right to claim an elective share under the probate code. It follows, we conclude, that the waiver of the right to claim an elective share necessarily waives any inchoate interest in the other spouse's property.

■ A spouse may waive the right to claim an elective share, but a waiver of the elective share prior to marriage must be accomplished by an antenuptial agreement pursuant to Minn.Stat. § 519.11. Minn.Stat. § 524.2–204. The antenuptial contract statute provides that the parties may employ an agreement conforming to the statute to bar a spouse from "all rights" in the other spouse's estate that are not secured by the agreement. Minn.Stat. § 519.11, subd. 1 (1984). Appellant does not argue that her antenuptial agreement violates Minn.Stat. § 519.11. The only question is whether the antenuptial agreement contains a waiver of appellant's right to claim an elective share.

■ Except where the language of a contract is ambiguous or its construction depends on extrinsic evidence, the construction

and effect of a contract are questions of law for the court. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979) (citations omitted). We are to conduct de novo review of the trial court's contract interpretation. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978).

We agree with the trial court that appellant's antenuptial contract is unambiguous and waives appellant's right to claim an elective share. The antenuptial agreement states that appellant accepts a specific bequest from her husband's estate "in lieu of" her right to elect against her husband's will. Similar language has been held by other courts to be a waiver of the right to claim a statutory elective share. *See e.g. In re Schwartz's Estate,* 79 Cal.App.2d 308, 179 P.2d 868, 869 (1947); *In re Oppenheimer's Estate,* 73 Mont. 560, 238 P. 599, 600, 601 (1925); *In re Bloomingdale's Estate,* 142 N.Y.S.2d 781, 786 (N.Y.Surr.Ct.1955); *Troha v. Sneller,* 108 Ohio App. 153, 151 N.E.2d 595, 597, 601 (1958).

Moreover, the stated purpose of the antenuptial agreement was to limit the claims that one spouse may make against the estate of the other in order to preserve a portion of Jack Zehringer's estate for his children of a prior marriage and for the continuation of certain of his business enterprises. The only way to ensure those goals was for appellant to waive her right to elect against her husband's will.

Appellant argues that if there was a waiver of her inchoate interests in the antenuptial agreement, it was only effective between her, her husband and her husband's heirs. She contends that the agreement cannot be enforced by a third-party mortgagee who was unaware of the agreement at the time of the mortgage. But appellant misstates the nature of the inquiry. Respondent is not seeking to enforce the antenuptial agreement as a third-party beneficiary; rather, it is seeking a determination of the parties' rights in the mortgaged property. The question is whether appellant's husband could mortgage the property free and clear of any claim by appellant. The antenuptial agreement is the instrument that determines the rights of appellant and her husband in the property at the time of the mortgage. The agreement must be considered in any determination of the parties' interest in the property.[1] *See Heaney v. Nagel,* 14 Ill.2d 520, 153 N.E.2d 75, 77–78 (1958).

Appellant also argues that any waiver in the antenuptial agreement was conditional, so that until she received the promised bequest she did not waive her right to claim an elective share. We disagree. The language of the agreement does not suggest that the waiver is conditional. Moreover, if appellant's waiver was not effective until her husband's death, Jack Zehringer would be unable to reap the benefits of his bargain, namely the use of his property for the continuation of his business. If Jack Zehringer fails to leave the promised bequest, appellant may bring a cause of action against his estate to enforce the antenuptial agreement. If he makes the promised bequest but there are insufficient assets in the estate to satisfy it, this unfolds a risk appellant assumed by agreeing to accept a specific bequest in lieu of her elective share.

There is no merit in appellant's added arguments that respondent is equitably estopped from relying on the antenuptial agreement and that there are genuine issues of material fact in the case.

## DECISION

The trial court correctly granted respondent's motion for summary judgment. Appellant waived her right to claim an elective share and thereby waived any inchoate interest she might have in the mortgaged property.

**Affirmed.**

---

1. Suppose A conveys a parcel of land to B in fee simple who then mortgages the land to C. If, in a subsequent foreclosure action, A claims that she still owns the land, C would be entitled to introduce the deed conveying the land from A to B to resolve the ownership dispute. A would not be able to object to the deed on the grounds that C was not a party to the conveyance. Here, respondent is relying on the antenuptial agreement in the same way C is relying on the deed in the hypothetical.